# Supreme Court of Florida

_____

No. SC18-1975
_____

**JOSE ANTONIO JIMENEZ,**
Petitioner,

vs.

**PAMELA JO BONDI, et al.,**
Respondents.

December 12, 2018

PER CURIAM.

This case is before the Court on the petition of Jose Antonio Jimenez, a prisoner under sentence of death and under an active death warrant, invoking the Court's authority to issue all writs necessary to the complete exercise of its jurisdiction, *see* art. V, § 3(b)(7), Fla. Const., based on the Court's ultimate jurisdiction under article V, section 3(b)(1) of the Florida Constitution. Jimenez challenges this Court's construction of an unpublished order regarding the post-warrant proceedings in his case, as well as this Court's authority to prohibit the filing of new claims in the circuit court by a death-sentenced defendant under an active death warrant after a deadline prescribed by this Court, without leave of this

Court. In addition, Jimenez requests that we strike a finding in the prior unpublished order that his counsel violated an order of this Court by filing new claims in the circuit court after the deadline we established for doing so. Because this petition concerns an order we entered within our jurisdiction under article V, section 3(b)(1), and the relief sought, if granted, would have an immediate effect on specific actions counsel desires to take in relation to an active death warrant, we have jurisdiction under article V, section 3(b)(7). *Cf. Bedford v. State*, 633 So. 2d 13, 14 (Fla. 1994). We exercise our discretion to accept jurisdiction over this petition.

Jimenez's petition relates to our unpublished order, entered November 21, 2018, granting in part and denying in part his motion for rehearing, reconsideration, or clarification. Jimenez's motion for rehearing, reconsideration, or clarification concerned our decision to withdraw a new scheduling order we had entered *sua sponte* on November 19, 2018, and to advise the parties that the schedule we set in a prior order, issued on July 18, 2018, and amended by order dated August 10, 2018, still governs Jimenez's post-warrant litigation. In the November 21 order at issue, we stated the following, in pertinent part:

> [P]ursuant to this Court's August 10, 2018, order in SC18-1321, the deadline for proceedings in the trial court has passed and the parties have been directed that leave of this Court is required for further proceedings in the trial court. This direction was deemed necessary after Appellant's counsel violated this Court's scheduling order by bringing additional claims in the trial court after this Court's deadline

- 2 -

to do so, and without leave of this Court. Those additional claims resulted in Case No. SC18-1321.

To the extent that this Court's vacated November 19, 2018, order created confusion, Appellant's motion is granted in part to clarify that no further proceedings in the trial court are authorized without prior leave of this Court. Appellant's motion is otherwise denied. Should Appellant seek leave from this Court in a future filing, Appellant is cautioned that because Appellant's death warrant was signed on July 18, 2018, the deadline has passed for requesting the production of public records pursuant to Florida Rule of Criminal Procedure 3.852(h)(3). Appellant is further cautioned that because all post-warrant issues have been fully litigated in Case Nos. SC18-1247 and SC18-1321, no further state court discovery or proceedings will be allowed without good faith allegations demonstrating good cause, such as newly discovered evidence, that would warrant additional state court post-warrant litigation.

*Jimenez v. State*, Nos. SC60-85014 & SC18-132 (Fla. Order filed Nov. 21, 2018).

Jimenez contends that, in determining that he violated our prior order, and in determining that the amended deadline for trial court proceedings set forth in the August 10 order precludes him from making new filings in the circuit court without leave of this Court to do so, we have misconstrued our own orders and ignored the principle of law that, once a mandate issues after an appeal, jurisdiction over the cause is returned to the circuit court. *See State v. Miyasato*, 805 So. 2d 818, 824 (Fla. 2d DCA 2001) ("In general, the mandate in any case functions to end the jurisdiction of the appellate court and to return full jurisdiction of the case to the trial court."). He is mistaken.

- 3 -

**Relevant Post-Warrant Proceedings**

On July 18, 2018, in response to the Governor's scheduling of Jimenez's execution for August 14, 2018, we issued an order requiring that "[t]he proceedings pending in the trial court, if any, . . . be completed and orders entered by 3:00 p.m., Tuesday, July 31, 2018." We then set a briefing schedule for "any proceeding that may come before this Court," requiring that the reply brief in any such proceeding be filed by August 8, 2018. Consistent with this Court's longstanding practice, this order was entered with no appeal pending. The order listed the case number from Jimenez's direct appeal, Case No. SC85014. Jimenez filed two motions in compliance with this schedule but also filed a new motion on August 6, 2018, in the circuit court, without leave of this Court to do so.

Although the August 6 filing violated this Court's order of July 18, 2018, no issue was made of this violation at that time, and the motion was considered by the circuit court and later this Court as though no such violation had occurred. On August 10, 2018, we entered an order amending the scheduling order, nunc pro tunc to the date of that order, to account for the late filing. We set a new deadline of August 10, 2018, at 4:00 p.m. for the completion of "[t]he proceedings pending in the trial court, if any," and then directed, "As that deadline has passed, no further proceedings in the trial court are permitted, including filings by either party, without prior leave of this Court." As explained in response to Jimenez's

- 4 -

motion for rehearing, reconsideration, or clarification, this language was deemed necessary because counsel for Jimenez did not appear to understand that our order requiring the completion of all trial court proceedings by 3:00 p.m. on Tuesday, July 31, 2018, meant that he could not initiate new proceedings in the trial court after that date and time.

## Analysis

In challenging our construction of the July 18 order, both as originally written and as amended, Jimenez contends that it did not preclude him from making new filings in the circuit court without leave of this Court because it encompassed only the "proceedings pending" on July 18. On the contrary, when this language is considered in context of the entire order and case, it precludes the institution of any new proceedings in the circuit court challenging Jimenez's death sentence or warrant, or his convictions, without leave of this Court. The order was entered in response to a death warrant due to the need to complete any proceedings that were to arise under our jurisdiction over death sentences by the time of the scheduled execution, and it set a schedule for "any proceeding that may come before this Court." Accordingly, the scheduling order, both as issued and as amended, prohibited the filing of new claims in the circuit court after the deadline set forth in that order.

Contrary to Jimenez's argument, the issuance of the mandate in the two postconviction appeals that ensued after the issuance of his death warrant did not render the scheduling order inoperable.  The scheduling order was not issued solely for the purpose of our administration of those appeals or solely within our appellate jurisdiction over those appeals.  It was entered before either appeal was filed and for the purpose of providing order in any proceedings that would challenge Jimenez's death sentence or the State's duty to carry it out, and to ensure that this Court would have sufficient time to consider any appeals Jimenez wished to bring before his scheduled execution.

To the extent that Jimenez challenges our authority to enter a post-warrant scheduling order that sets a deadline for completion of trial court proceedings, and after which no further trial court filings or actions are permitted, we reject that challenge.  As explained by this Court long ago in *State ex rel. Davis v. City of Avon Park*, 158 So. 159, 164 (Fla. 1934): "Every court has inherent powers to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, subject to, or not in conflict with, valid existing laws and constitutional provisions."  That inherent power is granted generally by article II, section 3 of the Florida Constitution ("The powers of the state government shall be divided into legislative, executive and judicial branches."); article V, section 1 of the Florida Constitution ("The judicial power shall be vested in a supreme court,

- 6 -

district courts of appeal, circuit courts and county courts."); Article V, section 2(a) of the Florida Constitution ("The supreme court shall adopt rules for the practice and procedure in all courts including the time for seeking appellate review [and] the administrative supervision of all courts . . . ."); and article V, section 3(b)(1) of the Florida Constitution (granting the supreme court exclusive jurisdiction over appeals in death penalty cases). This Court's jurisdiction to "hear appeals from final judgments of trial courts imposing the death penalty," art. V, § 3(b)(1), includes "all types of collateral proceedings in death penalty cases," *State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997). *See* Fla. R. App. P. 9.040(a) ("In all proceedings a court shall have such jurisdiction as may be necessary for a complete determination of the cause."). For these reasons, we reject Jimenez's challenge to our authority to issue or enforce the deadlines set forth in our post-warrant scheduling order.

Of course, if Jimenez had a good faith basis for filing a new document in the circuit court, our November 19 and 21 orders plainly allowed him to request leave of this Court to do so. He did not.[1]

_____

1. Prior to our November 19 order, Jimenez filed three new demands for public records in the circuit court, without leave of this Court to do so and in violation of our July 18 scheduling order, as amended on August 10 (which specifically stated that "no further proceedings in the trial court are permitted, including filings by either party, without prior leave of this Court"). Two of these requests were filed under rule 3.852(h)(3). As we cautioned in our November 21 order, these requests are untimely under the ten-day deadline set forth in rule

We decline to strike our prior finding that Jimenez's counsel violated our scheduling order. After considering Jimenez's arguments in the petition at issue, we reaffirm that he violated the July 18 order, as originally written, when he filed a new motion on August 6 in the circuit court without leave of this Court to do so. However, we have not sanctioned him or his client for this violation because we accept that counsel's actions were born out of an honest misunderstanding of the scheduling order and its effect. We noted the violation originally for instructive purposes only and have addressed it here only because Jimenez's request for relief requires that we do so.

For the foregoing reasons, we exercise jurisdiction over Jimenez's all writs petition and deny it.

It is so ordered. No rehearing will be entertained by this Court.

---

3.852(h)(3), as Jimenez's death warrant was signed on July 18, 2018. They are improper for the additional reason that rule 3.852(h)(3) "limits the request for production of additional public records under that subdivision to 'a person or agency from which collateral counsel has previously requested public records.' " *Jimenez v. State*, Nos. SC18-1247 & SC18-1321, 2018 WL 4784203, at *4 (Fla. Oct. 4, 2018). The third request was filed under rule 3.852(i), which requires the defendant to show that "the additional public records are either relevant to the subject matter of the postconviction proceeding or are reasonably calculated to lead to the discovery of admissible evidence." Fla. R. Crim. P. 3.852(i)(1)(C). This request does not meet this requirement. However, the Department has filed a notice to the circuit court that it has complied with the demands in part, as a courtesy, by providing the requested medical records. Jimenez has not sought leave to file any proceeding in the circuit court after receiving these records.

CANADY, C.J., and POLSTON, LABARGA, and LAWSON, JJ., concur.
PARIENTE, J., concurs in result with an opinion, in which LEWIS and QUINCE, JJ., concur.

PARIENTE, J., concurring in result.

On the very narrow issue presented in this case, I agree that Jimenez is not entitled to relief because he was not entitled to a new scheduling order after the stay previously issued by this Court was lifted and the execution date reset. However, I write to ensure that the majority's opinion not be construed as a condemnation of Jimenez's counsel, Marty McClain—a tireless and zealous advocate for defendants on death row for decades.

First, I caution that the majority's opinion should not be read to preclude future defendants under an active death warrant from filing claims for relief. In this case, some of the problems arose, in my view, from the extremely short warrant period—that is, the time between the signing of the warrant and the execution date.

Governor Scott signed Jimenez's death warrant on July 18, 2018, scheduling his execution for 27 days later—August 14, 2018. *Jimenez v. State*, 43 Fla. L. Weekly S433, 2018 WL 4784203, *21 (Fla. Oct. 4, 2018) (Pariente, J., concurring in part and dissenting in part). As I explained in our October 4 opinion:

> This extremely short warrant period created a fire drill approach
> to the review of Jimenez's claims. It was not until after the
> postconviction court denied Jimenez's sixth successive postconviction
> motion (filed on August 6, 2018) that this Court entered a stay of

- 9 -

execution. . . . The postconviction court and Jimenez's attorneys were forced to race against the clock in reviewing and presenting all of Jimenez's claims, respectively. But for this Court entering a stay of execution as a result of Jimenez's second post-warrant appeal, this Court would have also had inadequate time to thoroughly review his claims.

*Id.*

Before an execution may proceed, this Court has the solemn obligation to carefully ensure that there are no constitutional bars to the execution and that the defendant's rights have been protected. *See id.* ("[S]ome claims, such as those challenging the execution method, cannot be raised or evaluated until the signing of the death warrant. At the least, defendants must have adequate time to investigate and raise and courts must have adequate time to properly review these warrant-based claims."). When the machinery of the State is used to execute someone, this Court must remain vigilant, even if claims arise at the last minute.

As to Jimenez's August 6 filing, which gave rise to case number SC18-1321 and our subsequent opinion, I cannot agree with this Court determining *post hoc* that counsel acted inappropriately by filing claims based on newly discovered evidence. *See* majority op. at 8. That claim arose out of public records produced after the Governor signed the death warrant and resulted in this Court issuing a stay of execution so we could properly address the case on the merits, which we did in our October 4 opinion. *See generally Jimenez,* 43 Fla. L. Weekly S433.

- 10 -

While I ultimately concurred in the opinion affirming the postconviction court's denial of Jimenez's successive motion for post-conviction relief regarding newly discovered evidence, Mr. McClain's motions raised claims that were important to review, as they involved possible concerns regarding Jimenez's guilt. Rather than criticizing Mr. McClain for filing that claim, I applaud Mr. McClain's decades of work in representing defendants on death row.

During my tenure on this Court, the State has executed fifty-seven individuals, and I have concurred in the overwhelming majority of all of these death warrant opinions or orders. Jimenez's will be the fifty-eighth execution in the State of Florida since I joined the Court.[2] During that time, no advocate has been more dedicated or zealous than Mr. McClain in representing capital defendants at all stages of their cases, including the very difficult time period after a death warrant is signed and execution scheduled. Mr. McClain never gives up, and for that he should be praised—not chastised.

In conclusion, I concur with the majority's decision that, based on the facts of this case, Jimenez was not entitled to a new scheduling order. However, I disagree with the majority's discussion that could be construed as a criticism of Mr. McClain for filing claims of newly discovered evidence after receiving records

---

2. Since the death penalty was re-enacted after the United States Supreme Court held the death penalty unconstitutional in *Furman v. Georgia*, 408 U.S. 238 (1972), the State of Florida has executed ninety-six defendants.

from a post-warrant records request.  This Court depends on attorneys like Marty McClain to advocate for death row defendants—never a popular cause but essential to ensuring that each execution withstands constitutional scrutiny.

LEWIS and QUINCE, JJ., concur.

Original Proceeding – All Writs

Martin J. McClain and Linda McDermott of McClain & McDermott, P.A., Wilton Manors, Florida,

 for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Lisa-Marie Lerner, Assistant Attorney General, West Palm Beach, Florida, and Melissa Roca Shaw, Assistant Attorney General, Miami, Florida,

 for Respondents